IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> EDMUND HULL FORD, JR., ) <br> ) <br> ) <br> Defendant. ) <br> ) | Cr. No.  2:25cr20035-TLP <br><br><br><br> 18 U.S.C. § 666(a)(1)(B) <br> 26 U.S.C. § 7201 |

## INDICTMENT

**THE GRAND JURY CHARGES:**

## BACKGROUND

At all times material to this Indictment unless otherwise indicated:

1. The legislative power of Shelby County, Tennessee was vested in the board of county commissioners of Shelby County (the Commission). The legislative power included all lawful authority to adopt ordinances and resolutions governing the operation of government or regulating the conduct and affairs of the residents of the county, to adopt the county budget, to fix the county tax rate, to make appropriations of county funds for all legal purposes, and to exercise all other authority of a legislative nature vested in the County.

2. The Commission consisted of thirteen Commissioners, elected for four-year terms.

3. Commissioners' duties were outlined in the Shelby County Charter and Permanent Rules of Order of the Board of County Commissioners of Shelby County, Tennessee.

4. Pursuant to the Shelby County Code of Ordinances, any Commissioner with the responsibility to vote or advise on any matter was required to disclose before the vote any personal interest in the matter to be voted upon. In addition, when the subject of a matter to be voted upon involved a contract in which a Commissioner had a direct personal interest, that Commissioner was required to recuse himself or herself from discussion or voting on the matter.

5. Each member of the Commission had funds available in the form of community enhancement grants to allocate within their individual districts to non-profit organizations.

6. These community enhancement grants were only available to support non-profits that engaged in public safety activities, cultural activities and community development activities. Grant proceeds could only be used by the non-profits in one or more of the following areas: programs, services, operating costs, equipment, construction, renovation, and maintenance.

7. Commissioners also were able to sponsor nonprofits for grant awards using other funds provided to Shelby County by the United States government.

8. Commissioners were agents of Shelby County.

9.     In each of the calendar years 2018-2023, Shelby County received more than $10,000 in benefits from the United States government under federal programs involving grants, subsidies, loans, guarantees, insurance, and other forms of assistance.

10.     The Internal Revenue Service ("IRS") governed and administered federal income taxation. The U.S. income tax system (hereafter "the U.S. tax system") imposed a tax based on the income of individuals and corporations. The U.S. tax system allowed reduction of taxable income for both business and some nonbusiness expenditures, called deductions. The U.S. tax system was based on self-assessment, meaning that taxpayers must declare and pay tax without being told the amount due by the taxing authority. The U.S. tax system relied on the honesty and integrity of individual taxpayers.

11.     An individual tax return, Form 1040, U.S. Individual Income Tax Return ("Form 1040"), was an official report that calculated a taxpayer's total tax liability. U.S. citizens and residents who received income exceeding a threshold amount in any one calendar year were required to file a Form 1040 for that calendar year with IRS by on or around April 15 of the following year. On that tax return, U.S. taxpayers were obligated to report their income. Taxpayers could also claim certain deductions to reduce the amount of tax owed. While the IRS audited some tax returns each year, as a practical matter it could only audit a tiny fraction of taxpayers.

<u>**Relevant Individuals and Entities**</u>

12.     **EDMUND HULL FORD, JR.** was elected to the Shelby County Board of Commissioners in 2018 and represented District 9.

13. Before his tenure on the County Commission, **FORD JR** served eleven years as a Memphis City Councilman. Members of the City Council could nominate non-profit organizations for grant funds.

14. From 2016 to 2018, when **FORD JR** served as the Budget Chair for the Memphis City Council, grants were awarded to nonprofit organizations through an application process. Those organizations whose applications were approved by the Council received funding, while organizations whose applications were denied did not. In 2018, the City Council voted to streamline the process by having a three-person panel review the applications and narrow the applications. **FORD JR**, as Budget Chair, served on the three-person panel responsible for reducing the pool of applications for submission to the Memphis City Council for review.

15. E&J Computer Services and Repair was a business operated by **FORD JR** and other members of his family.

16. E&J Computer Services and Repair deposited over $250,000 in its bank account from various nonprofits from 2017 to 2021. Each of these nonprofits received Memphis City Council and/or Shelby County Commission community grants while **FORD JR** served in office.

17. Precise Solutions and Consulting, LLC was a business entity operated by **FORD JR** which described its services as real estate buying, selling and consulting. Precise Solutions also received monies from nonprofits who received grant funds from Shelby County.

4

18.     Non-profit organization 1 (NPO 1) assisted parents and their children by developing positive parent and child relationships through parenting classes. The executive of NPO 1 was Individual 1.

19.     Non-profit organization 2 (NPO 2) focused on youth development and empowerment. The executive of NPO 2 was Individual 2.

20.     Non-profit organization 3 (NPO 3) focused on bullying prevention and leadership development through mentorship.  The executive of NPO 3 was Individual 3.

21.     Business 1 was a local tax preparation, bookkeeping, and payroll business operated by Individual 4.

22.     Business 2 was a public relations business operated by Individual 5.

I.     **Overview of Scheme**

23.     While serving as a member of the Memphis City Council and then later as a member of the Shelby County Commission, **FORD JR,** in exchange for using his public office to secure grant funds for NPOs 1, 2 and 3, corruptly received financial payments from NPOs 1, 2 and 3 for the purchase of laptop computers. Between 2017 and 2020, **FORD JR** received financial payments directly to E&J Computer Services and Repair from NPO 1, 2 and 3.

24.     Beginning in December of 2020, *The Commercial Appeal* published a series of articles covering the award by the Commission of $450,000 to Junior Achievement, a national nonprofit organization. The *Commercial Appeal* reported that **FORD JR** had been accused of a breach of the Shelby County Charter and ethics code after he ushered

5

through a $450,000 grant to the nonprofit Junior Achievement and also sold them computers, a business interest he did not disclose.

25.     In 2021, and at **FORD JR's** direction, Individuals 1, 2 and 3 began to disguise their payments to **FORD JR**. They prepared or caused to be prepared checks to other businesses such as Business 1, Precise Solutions and Consulting, LLC and Business 2 from the financial accounts of NPOs 1, 2 and 3. The executives of Business 1 and Business 2, Individuals 4 and 5, then made those funds available to **FORD JR** for his use and benefit. Another payment from NPO 2 to **FORD JR** was disguised by drafting a check payable to Liberty Bank, which was then deposited into an account operated by **FORD JR.** NPO 3 further disguised payments to **FORD JR** by withdrawing cash from the NPO 3 bank account under the guise of payment to a business named TechSoup, which funds were instead given to **FORD JR.** These covert payments from the NPOs and their executives to **FORD JR** were made in exchange for **FORD JR** corruptly using his public office to secure grants for these non-profit organizations.

26.     Between 2018 and 2022, **FORD JR** received payments, both directly and covertly, from NPOs 1, 2, and 3 that he failed to report to the IRS as income. In addition, between 2018 and 2022, **FORD JR** claimed itemized deductions on his federal tax returns for computers that he claimed to have donated to various nonprofits, which the nonprofits confirmed were not, in fact, donated as declared.

6

II.     **General Allegations**

**<u>NPO 1</u>**

27.     On January 1, 2020, **FORD JR** sent a text to Individual 1 stating, "Lets talk more this week re: your nonprofit."  On January 7, 2020, Individual 1 sent her email addresses to **FORD JR.  FORD JR** replied on January 8, 2020, that he was "going to send today."  Individual 1 replied on January 9, 2020, "Got it!"  **FORD JR** replied, "GOOD. Let's get you/us that money."

28.     On February 11, 2020, **FORD JR** texted Individual 1, "Good Morning.  I know it is very early, but I'm going to order your 12 laptops this week and store them. Have you talked to Tonya?"

29.     On February 24, 2020, in a resolution sponsored by **FORD JR**, the Shelby County Commission awarded a $28,500 community grant to NPO 1. **FORD JR** did not disclose any business relationship with NPO 1 or recuse himself from the vote.  **FORD JR** voted in favor of awarding the grant to NPO 1. On February 25, 2020, **FORD JR** texted Individual 1, "Item passed last night.  You should get the check in 30 days."  **FORD JR** then told her he already had her laptops and bags fully loaded.

30.     On April 2, 2020, E&J Computers Services and Repair deposited a check from NPO 1 in the amount of $15,000, constituting more than half the awarded amount of the grant.

31.     On November 18, 2020, **FORD JR** sponsored NPO 1 in a proposal for another grant. **FORD JR** voted in favor, and NPO 1 received a second grant in the amount

7

of $60,000. **FORD JR** did not disclose his business relationship with NPO 1 or abstain from the vote.

32.    In or about August 2021, **FORD JR** instructed Individual 1 to draft a check for $16,000 to Business 2.

33.    On September 6, 2021, **FORD JR** texted Individual 1, "Hey just wanted to let you know that USPS is slow as hell. It's still in route to Miami.  I'll let you know when it's received, so no one should be cashing it yet just in case you see any withdrawal in your account. If you do, let me know!"

34.    On September 19, 2021, Individual 5 sent **FORD JR** a copy of a voicemail she received from USPS explaining that the package was still in Memphis.  **FORD JR** then texted Individual 5, "That's a damn shame. After I finish washing up I might as well call [Individual 1] to get her to stop payment on her check." **FORD JR** then texted, "OK she went ahead and stopped the check. I will send another one Wednesday via FedEx overnight."

35.    On or about September 21, 2021, **FORD JR** instructed Individual 1 to draft a second check to Business 2, which she did.

36.    On September 23, 2021, Individual 5 deposited the check from NPO 1 in her account. Following the deposit Individual 5 transferred the money to **FORD JR** via his Precise Solutions and Consulting account at Navy Federal Credit Union (NFCU).

37.    In April 2023, **FORD JR** came to Individual 1's home. **FORD JR** had a list of nonprofits written down who were going to be granted money, including NPO 1. **FORD**

8

**JR** pointed at the list and said that he would get NPO 1 $30,000 in grant funds to buy computers from him. The sheet of paper had five total nonprofits on it, including NPO 1.

**NPO 2**

38.     In November 2019, Individual 2 appeared before the Shelby County Commission requesting $25,000 in community grants for NPO 2.  **FORD JR** sponsored the grant request.

39.     On November 17, 2019, Individual 2 texted **FORD JR,** "Morning, you should do 20 and we do 23 a piece.  Just a thought."  **FORD JR** responded, "That might be a good thought. I'll let you know."

40.     On November 18, 2019 **FORD JR** moved to amend the grant, for a total of $46,000.  The final resolution was approved, with **FORD JR** voting in favor.

41.     On January 4, 2020, Individual 2 texted **FORD JR** the following, "Also you will get the entire 23, but I only need 20 computers. Let's talk when you get a chance." On January 12, 2020, Individual 2 hadn't received the grant check but **FORD JR** texted Individual 2, "I know it'll come. Got your 20 ordered so we're good."  On January 17, 2020, Individual 2 texted, "Sorry for texting so late. Make the invoice out for 30 even though I'm only getting 20. I think it would look better."  **FORD JR** replied, "Ok I'll do that in the morning." Later that day, Individual 2 texted," What do you think about making the IV out for $20, with 30 LT on it, but I would only need 20 LT. I wouldn't need anything from you physically as far as $, just the company's name on the IV? If not we can do it your way or another way. I'm not handling the account any longer. So just let me know if that don't

9

work for you and we can go another route. Call me if you need clarification." On January 17, 2020, NPO 2 received a $46,000 check from Shelby County Government.

42. On January 29, 2020, NPO 2 wrote a check to E&J Computer Services and Repair for $20,000. On January 30, 2020, **FORD JR** deposited, or caused to be deposited, the $20,000 check from NPO 2 in the account for E&J Computer Services and Repair. "30 laptops" was listed in the "for" section of the check.

43. On November 4, 2020, **FORD JR** sponsored a community grant to NPO 2 in the amount of $55,000. The vote passed 8-0, and **FORD JR** voted in favor and did not abstain. On January 15, 2021, the $55,000 grant check from Shelby County was deposited into the NPO 2 account.

44. On March 12, 2021, NPO 2 wrote a check to Business 1 in the amount of $27,749.70. The check was endorsed by Individual 4.

45. On March 26, 2021, after the check from NPO 2 cleared the Business 1'Regions Bank account ending in 9952, Individual 4 transferred funds to her Regions Now Prepaid account.

46. On December 15, 2021, **FORD JR** sponsored a community grant in the amount of $60,000 to NPO 2. The vote passed 12-0, and **FORD JR** voted in favor and did not abstain during the consent agenda on December 20, 2021. **FORD JR** did not disclose any business or personal relationship with NPO 2 during the Shelby County Commission meetings.

47. On March 10, 2022, a check from Shelby County Government for $60,000 was deposited into the NPO 2 Bank of America account.

10

48. On March 24, 2022, NPO 2 drafted a check to Business 1 in the amount of $25,000 for "technology 2022." The check was deposited into Business 1's Regions Bank account. Between April 11, 2022, and June 7, 2022, $24,000 was transferred from Individual 4's Regions Bank account into a Regions Now Prepaid account.

49. Between April 19, 2022, and June 9, 2022, $23,950 was withdrawn from the Prepaid account in cash via ATM withdrawals, primarily in the Midtown and Whitehaven areas of Memphis. All withdrawals occurred with a debit card ending in 2501 in 32 separate transactions. Most of the cash withdrawals were in the amount of $800, which was under Region's maximum daily allowance of $808.

50. Video footage for many of the transaction dates from April 19, 2022, through June 9, 2022, showed **FORD JR** withdrawing cash and driving away in a Chevy Impala registered to **FORD JR**.

51. On December 19, 2022, **FORD JR** sponsored a community grant of $60,000 for NPO 2. After the presentation, the commission voted to approve the grant. **FORD JR** was present and voted in favor of the grant.

52. On January 12, 2023, a deposit was made in the NPO 2 Bank of America bank account in the amount of $60,000.

53. On February 5, 2023, NPO 2 drafted a check to Liberty Bank in the amount of $25,000 for "technology 695xxxx." The check was deposited into a Liberty Bank account with account number 695xxxx belonging to **FORD JR**.

**NPO 3**

54. On May 17, 2018, Individual 3 appeared before the Memphis City Council to request a $60,000 grant for NPO 3. The Council had resolved to provide grants only up to 30% of a nonprofit's total operating budget. Applicants, therefore, were required to submit operating budgets with their applications, which were vetted for eligibility by the three-person panel on which **FORD JR** served.

55. On May 24, 2018, when the Council reconvened, **FORD JR** made a motion to raise the grant amount from $60,000 to $95,000, an amount over 30% of NPO 3's alleged operating budget. The grant was awarded to NPO 3.

56. From February 2019 through April 2019, E&J Computer Services and Repair received $30,000 from NPO 3.

57. On October 16, 2019, while serving on the Shelby County Commission, **FORD JR** sponsored NPO 3 for a grant in the amount of $50,000.

58. On October 21, 2019, the Commission voted in favor of the grant, and there were no abstentions. **FORD JR** did not disclose any prior business or financial relationship with NPO 3 to the Commission.

59. On March 23, 2020, NPO 3 wrote a $30,000 check to E&J Computer Services and Repair.

60. On October 26, 2020, **FORD JR** sponsored a grant award for NPO 3 in the amount of $60,000. By this point, NPO 3 had spent a total of $60,000 at E&J Computer Services and Repair.

61. From June 21, 2021, through August 20, 2021, Individual 3 withdrew $30,000 in cash from the NPO 3's Regions checking account. According to the memo line, three of the four withdrawals were related to TechSoup. Individual 3 gave the money to **FORD JR**.

62. On February 2, 2022, **FORD JR** sponsored a $55,000 grant for NPO 3. The Shelby County Commission awarded the grant on February 7, 2022.

63. On April 25, 2022, NPO 3 wrote a check to Precise Solutions and Consulting, LLC in the amount of $22,000.

64. The $22,000 check from NPO 3 was deposited in Precise Solutions and Consulting, LLC's NFCU business account on April 26, 2022. Following the deposit, between April 2022 and June 2022, multiple transfers were made from the Precise Solutions and Consulting, LLC business account to **FORD JR's** personal NFCU checking account.

65. On December 19, 2022, **FORD JR** sponsored a community grant of $60,000 for NPO 3. The proposal was approved by the Shelby County Commission. On May 16, 2023, NPO 3 drafted a check to Precise Solutions and Consulting, LLC for $25,000.

## STATUTORY ALLEGATIONS

### COUNT ONE

**18 U.S.C. § 666(a)(1)(B)**
**Bribery and Kickbacks Concerning Programs Receiving Federal Funds**

66. Paragraphs 1 through 65 are incorporated and realleged as if fully set forth herein.

13

67. Beginning in or around March 2020 and continuing until in or around May 2023, in the Western District of Tennessee and elsewhere, during which calendar years Shelby County received in excess of $10,000 from the United States government under federal programs involving grants, subsidies, loans, guarantees, insurance, and other forms of assistance,

**EDMUND HULL FORD, JR.**

an agent of Shelby County, Tennessee, whose duties included those of an elected Commissioner of Shelby County, did corruptly solicit, demand, accept, and agree to accept for his own benefit, things of value from **Individuals 1, 2** and **3**, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of Shelby County, Tennessee valued at $5,000 or more, that is, the use of his public office to secure grant funds for **NPOs 1, 2** and **3** in exchange for receipt of a portion of those funds for his own use and benefit, in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNTS TWO, THREE, FOUR, FIVE, SIX and SEVEN

**26 U.S.C. § 7201**
**Attempt to Evade or Defeat Tax**

68. Paragraphs 1 through 65 are incorporated and realleged as if fully set forth herein.

69. Beginning in or around 2018 and continuing through in or around May 2023, in the Western District of Tennessee and elsewhere, defendant

**EDMUND HULL FORD, JR.**

14

did willfully attempt to evade and defeat income taxes due and owing by **FORD JR** to the United States of America for the calendar years set forth below, by filing false Forms 1040, U.S. Individual Income Tax Returns, for those calendar years, and by committing the following affirmative act(s) of evasion, among others:

| Count | Year | Affirmative Act(s) |
|---|---|---|
| 2 | 2018 | 1. failed to report income from E&J Computer Services and Repair on his 2018 income tax return resulting in an underreporting of net business income;<br>2. overstated the total itemized deductions and noncash charitable contributions on his 2018 income tax return. |
| 3 | 2019 | 1. failed to report income from E&J Computer Services and Repair and Precise Solutions and Consulting, LLC on his 2019 income tax return resulting in an underreporting of net business income.<br>2. overstated the total itemized deductions and noncash charitable contributions on his 2019 income tax return;<br>3. provided false donation records for his 2019 income tax return. |
| 4 | 2020 | 1. failed to report income from E&J Computer Services and Repair and Precise Solutions and Consulting, LLC on his 2020 income tax return resulting in an underreporting of net business income.<br>2. overstated the total itemized deductions and noncash charitable contributions on his 2020 income tax return;<br>3. provided false donation records for his 2020 income tax return. |
| 5 | 2021 | 1. failed to report income from E&J Computer Services and Repair and Precise Solutions and Consulting, LLC on his 2021 income tax return resulting in an underreporting of net business income.<br>2. overstated the total itemized deductions and noncash charitable contributions on his 2021 income tax return;<br>3. provided false donation records for his 2021 income tax return. |

| 6 | 2022 | 1. failed to report income from Precise Solutions and Consulting, LLC on his 2022 income tax return resulting in an underreporting of net business income. |
| --- | --- | --- |
|   |   | 2. overstated the total itemized deductions and noncash charitable contributions on his 2022 income tax return; |
|   |   | 3. provided false donation records for his 2022 income tax return. |
| 7 | 2023 | 1. during an interview with federal agents in May 2023, falsely minimized his involvement with E&J Computer Services and Repair and Precise Solutions and Consulting, LLC. |

In violation of Title 26, United States Code, Section 7201.

# FORFEITURE ALLEGATIONS

1.  Upon conviction of Count One of this Indictment, the defendant, **EDMUND HULL FORD, JR** shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense(s) set forth in Count One, pursuant to 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c), and the provisions of 21 U.S.C. § 853. The property subject to forfeiture includes, but is not limited to:

   a.   a forfeiture money judgment in United States currency, which sum represents the value of any property that constitutes or is derived from gross proceeds traceable to the defendant's commission of the offense(s).

**A TRUE BILL:**

_____
**F O R E P E R S O N**

**DATED: <u>February 27, 2025</u>**

_____
**Attorney for the United States**
**Acting under Authority Conferred by 28 U.S.C. § 515**

17